IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENAY N. WALTHER,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:20-CV-1687-DMC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 15 and 17.

        The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

> Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

   Step 4   If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

   Step 5   If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

   To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

   The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /
/ / /
/ / /
/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on November 22, 2016.  See CAR 15.[1] In the application, Plaintiff claims disability began on June 5, 2013.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on October 22, 2019, before Administrative Law Judge (ALJ) Matilda Surh.  In a November 13, 2019, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s):  status post lumbar fusion;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work; the claimant can stand and/or walk for four hours and sit for four hours in an eight-hour workday; the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs, ropes, ladders, and scaffolds;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work as a cashier and checker.

See id. at 18-28.

After the Appeals Council declined review on July 2, 2020, this appeal followed.

## III.  DISCUSSION

In her opening brief, Plaintiff contends:  (1) the ALJ erred by failing to articulate sufficient reasons for discounting the opinion of treating providers, Drs. Rahman and Senegor; (2) the ALJ's rationale for accepting Dr. Barnes' 2017 opinion over his 2018 opinion is not supported by the record; (3) the ALJ failed to articulate sufficient reasons for discounting Plaintiff's statements and testimony; and (4) the ALJ failed to provide sufficient reasons for rejecting third-party lay witness evidence from Plaintiff's mother.  See ECF No. 15.

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on April 12, 2021, ECF No. 11.

A. **Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

For all claims, as here, filed before March 27, 2017, ALJs are bound by regulations and case law requiring ALJs to give physicians' opinions different weights, depending on the relationship between the physician and the claimant. See 20 C.F.R §§ 404.1527(c) & 416.920(c); Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014). This rule is known as the treating physician rule. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81

F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion in a claim filed before March 27, 2017, the Court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

       1.     <u>Dr. Rahman</u>

As to Dr. Rahman, the ALJ stated:

> Fareen Rahman, M.D., in a form dated January 23, 2019, opined that the claimant could perform a reduced range of sedentary work, including, sit and stand/walk for less than two hours in an eight-hour workday, with postural limitations, and would miss more than four days of work per month (Ex. 12F). I give little weight to the opinion of Dr. Rahman. This opinion is inconsistent with Dr. Rahman's treatment notes from the same time, where a physical examination showed only limited flexion of the back with pain, which does not support the extreme sit, stand, and walk opinion of Dr. Rahman (Ex. 11F/213). Dr. Rahman's opinion is also inconsistent with the claimant's reporting to Dr. Rahman that her activities included biking and walking, both of which suggest that the claimant's functional abilities are more than opined by Dr. Rahman (Ex. 11F/211). In addition, Dr. Rahman's opinion is inconsistent with treatment notes that detail the claimant was repeatedly observed to have a normal gait, normal motor strength, and range of motion in all joints (*See*, for example, Exs. 8F/18; 9F/83; 11F/236, 260, 306; 18F/7). This opinion is also not consistent with the observations of the claimant and opinions furnished by the consultative examiner (Exs. 4F; 10F).

CAR 25.

Plaintiff contends the ALJ should have given Dr. Rahman's opinion greater weight because he is a treating physician who offered a recent opinion. <u>See</u> ECF No. 15, pgs. 21-22. Plaintiff also argues the ALJ's analysis of Dr. Rahman's opinion rests on an unfair "reading of the record." <u>Id.</u> at 21.  In this regard, Plaintiff argues:

> The ALJ added that it was inconsistent with "the claimant's reporting to Dr. Rahman that her activities included biking and walking, both of which suggest that the claimant's functional abilities are more than opined by Dr. Rahman." Tr. 25. This was not a fair reading of the record. The "biking and walking" noted by Ms. Walther was the walking and biking she did on the treadmill and stationary bike – exercises she was advised to do by the physical therapists. See e.g. Tr. 1352. Dr. Rahman wrote that Ms. Walther was doing "PT at home" and stated that she was still laying down most of the time and was taking 30 minutes to walk one half a block. Tr. 953. She still had limited flexion due to pain. Pain frequently interfered with her concentration; she laid down most of the time; was only able to sit for 15 minutes and stand for 5 minutes before having to sit; and needed to rest for one hour after exerting herself. Tr. 953.

<u>Id.</u>

/ / /

/ / /

14

The ALJ properly rejected Dr. Rahman's opinion. The ALJ found an inconsistency in Dr. Rahman's opinion and notes as to Plaintiff's back problem and Plaintiff's ability to sit, stand, and walk. The ALJ supported this finding by citing to Dr. Rahman's opinion and notes where Dr. Rahman stated that Plaintiff only had limited flexion of the back but concluded that Plaintiff had such an extreme condition that Plaintiff could not sit or stand for even 2 hours. The ALJ also found there to be an inconsistency with Dr. Rahman's opinion and Plaintiff's functional abilities. The ALJ supported this finding by citing to Dr. Rahman's notes where "gym 2 days a week-bike, threadmill [sic], squats, but more active than before, walking, biking at home 2 days a week" was listed under the "activities" category. ECF No. 11-11, pg. 64. Additionally, the ALJ found that Dr. Rahman's opinion was inconsistent with treatment notes that demonstrate that Plaintiff has a normal gait, normal motor strength, and range of motion in all joints. See, e.g., ECF No. 11-8, pg. 178; ECF No. 11-9, pg. 84; ECF No. 11-11, pgs. 89, 113; ECF No. 11-12, pg. 3; ECF No. 11-15, pg. 1449. Further, the ALJ found that Dr. Rahman's opinion was inconsistent with observations of Plaintiff and other opinions citing to Dr. Barnes's opinion stating that Plaintiff had a sitting capacity of up to four hours in an eight-hour workday. See ECF No. 11-8, pg. 96. Therefore, the ALJ appropriately provided specific and legitimate reasons for rejecting Dr. Rahman's opinion.

2. Dr. Senegor

As to Dr. Senegor, the ALJ stated:

> Moris Senegor, M.D., in a form dated March 11, 2019, opined that the claimant could perform a significantly reduced range of sedentary work, including, sit and stand/walk for less than two hours in an eight-hour workday, with unscheduled breaks and postural limitations, and that the claimant would miss more than four days of work per month (Ex. 14F). I give little weight to the opinion of Dr. Senegor. This opinion is not consistent with Dr. Senegor's treatment notes that show only sporadic, surgery follow-ups were provided by Dr. Senegor, while physical findings did not correspond to the extreme limitations opined by Dr. Senegor (Ex. 14F). Dr. Senegor's opinion is also inconsistent with treatment notes that detail the claimant was repeatedly observed to have a normal gait, normal motor strength, and range of motion in all joints (*See*, for example, Exs. 8F/18; 9F/83; 11F/236, 260, 306; 18F/7). This opinion is also not consistent with the observations of the claimant and opinions furnished by the consultative examiner (Exs. 4F; 10F).

CAR 25.

15

Plaintiff argues: "The ALJ's rationale did not rise to the level of being specific and legitimate." ECF No. 15, pg. 18. As with Dr. Rahman, Plaintiff asserts that Dr. Senegor was plaintiff's treating neurosurgeon who had unique experience and knowledge of Plaintiff's case and who provided the most recent opinion and that, for these reasons, the ALJ should have accorded Dr. Senegor's opinions controlling weight. See id. at 18-21.

The ALJ properly rejected Dr. Senegor's opinion. As the ALJ found, Dr. Senegor's opinion was inconsistent with treatment notes that demonstrate that Plaintiff has a normal gait, normal motor strength, and range of motion in all joints. See, e.g., ECF No. 11-8, pg. 178; ECF No. 11-9, pg. 84; ECF No. 11-11, pgs. 89, 113; ECF No. 11-12, pg. 3; ECF No. 11-15, pg. 1449. Additionally, the record supports the ALJ's finding that Dr. Senegor's opinion was inconsistent with observations of Plaintiff and other opinions, specifically Dr. Barnes's opinion stating that Plaintiff had a sitting capacity of up to four hours in an eight-hour workday. See ECF No. 11-8, pg. 96. On this record, the Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Senegor's opinion.

### 3. Dr. Barnes

Dr. Barnes rendered opinions in 2017 and 2018. As to these opinions, the ALJ stated:

> Based upon the April 25, 2017, consultative examination, Dr. Barnes opined that the claimant could perform light work, except the claimant could sit for four hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch, crawl, and climb steps and ladders (Ex. 4F/4). I give great weight to this opinion of Dr. Barnes. I credit this opinion as based upon an examination of the claimant (Ex. 4F). This opinion is also consistent with observations of the claimant's normal gait, normal motor strength, and range of motion in all joints (*See*, for example, Exs. 8F/18; 9F/83; 11F/236, 260, 306; 18F/7). Accordingly, I adopted this opinion of Dr. Barnes for the residual functional capacity, with more restrictive stand/walk limitations in consideration of the claimant's spinal surgery (Ex. 5F/15-17).
>
> Based upon the November 20, 2018 consultative examination, Dr. Barnes opined that the claimant could perform sedentary work, except the claimant could stand/walk and sit for up to four hours each in an eight-hour workday, occasionally perform postural activities, and could only travel limited distances (Ex. 10F/4). However, in a check-the-box form, Dr. Barnes opined that the claimant could occasionally lift up to twenty pounds, sit and walk for three hours in an eight-hour workday, with manipulative and environmental limitations (Ex. 10F/5-10). I give little

16

>weight to this opinion of Dr. Barnes. I note initially that it is internally inconsistent and the check-the-box portion of the opinion finds the claimant much more limited than the narrative opinion without a description of basis for such differences (Ex. 10F/4-10). Dr. Barnes' opinion is also inconsistent with observations of the claimant's normal gait, normal motor strength, and range of motion in all joints (Exs. 11F; 18F). Nevertheless, I concur with Dr. Barnes' opinion that the claimant could stand/walk and sit for up to four hours each in an eight-hour workday as it considered the claimant's spinal surgery and residual limitations.

CAR 24-25.

Plaintiff argues that the "Commissioner's rational for accepting Dr. Barnes' 2017 opinion over his 2018 opinion is not supported by the facts in this case." ECF No. 15, pg. 22. Plaintiff further states that "Dr. Barnes' 2018 opinion recognizes [Plaintiff's] declining condition and it is not inconsistent with the treating source opinions." Id.

The ALJ properly rejected Dr. Barnes's 2018 opinion. The ALJ found Dr. Barnes's 2018 narrative and questionnaire internally inconsistent because the questionnaire was more restrictive than the narrative portion. This finding is supported by the record. For example, the narrative report indicated Plaintiff could stand/walk and sit for up to four hours while the check the box form indicated only three hours for sitting and walking. See ECF No. 11-15, pg. 737. The record also supports the ALJ's conclusion that Dr. Barnes's 2018 opinion was inconsistent with treatment notes that demonstrate that Plaintiff has a normal gait, normal motor strength, and range of motion in all joints. See, e.g., ECF No. 11-8, pg. 178; ECF No. 11-9, pg. 84; ECF No. 11-11, pgs. 89, 113; ECF No. 11-12, pg. 3; ECF No. 11-15, pg. 1449. Therefore, the ALJ provided specific and legitimate reasons for rejecting Dr. Barnes's 2018 opinion.

### B. Plaintiff's Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient.

See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may also consider:  (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant reported that pain prevented her from sitting, standing, walking, or concentrating for more than thirty minutes at a time (Ex. 5B). She indicated that she stopped working because of her impairments (Ex. 1E/2). The claimant noted that she could only sit for thirty minutes before having severe pain (Ex. 4E/1). She attested that she could only walk for fifteen minutes before she needed to stop and rest for five minutes (Ex. 4E/6). The claimant testified that she is unable to work because of back pain that affects her ability to sit, stand, or walk for long periods. She testified that she is able to perform some household chores, but still has back pain. She testified that she is only able to drive for short distances because of back pain. She testified that she could sit for an hour a day and walk for fifteen minutes at a time. She testified that she spend[s] twenty hours per day in bed because of her impairments.

CAR 21-22.

In evaluating Plaintiff's statements and testimony, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As an initial matter, I note that despite the claimant's alleged onset date of June 5, 2013, no medical evidence was submitted from that time and earliest evidence submitted is from 2015. Regarding the medical evidence submitted concerning the claimant's status-post lumbar fusion, upon examination in June 2015 the claimant was observed as comfortable with a normal gait and back range of motion (Ex. 11F/48). At that time, an X-ray and physical therapy were recommended for the claimant's back pain (Ex. 11F/51). Upon examination in August 2015 the claimant was observed to have a decreased lumbar range of motion (Ex. 11F/76). Based upon the examination, the claimant was provided additional medication for her symptoms (Ex. 11F/79).
>
> In February 2016 the claimant was discharged from physical therapy where it was noted that the claimant had improved tolerance for activity, while the claimant's pain reporting remained the same (Ex. 2F/2-4). Upon examination in April 2016 the claimant was observed to have a decreased lumbar range of motion secondary to pain (Ex. 11F/147). At that time, medication based treatment was provided (Ex. 11F/149). In July 2016 the claimant's lumbar range of motion was normal, while the claimant had spasms bilaterally, but a normal gait and five of five strength (Ex. 11F/196). Upon examination in October 2016 the claimant was observed to have lumbar tenderness, but retained a full range of motion of all joints and a normal gait (Ex. 11F/555). At that time, the claimant's medication was refilled (Ex. 11F/556).
>
> During a surgery evaluation on March 29, 2017, the claimant's gait was observed as somewhat stiff and deliberate, while the claimant had a reduced range of motion and a negative straight leg raise (Ex. 5F/9). At that time, it was noted that Magnetic Resonance Imaging ("MRI") showed mild disc degeneration at L4-S1 with desiccation and slight bulging and marked facet hypertrophy at L4-L5 (Ex. 5F/9).
>
> Despite the March 29, 2017 observations, Dr. Barnes conducted a consultative examination of the claimant on April 25, 2017, and observed that the claimant's gait was normal and the claimant had no difficulty transitioning from a chair to the examination table (Ex. 4F/2). Dr. Barnes indicated that the claimant reported pain with lumbar range of motion testing (Ex. 4F/3). Dr. Barnes noted that a straight leg raise test was positive seating and supine bilaterally (Ex. 4F/3). However, Dr. Barnes reported that the claimant's motor strength was five out of five in all extremities, while the claimant's muscle tone was normal without atrophy (Ex. 4F/4).

///

///

On May 9, 2017 the claimant underwent spinal surgery, including interbody fusions at L4-S1 (Ex. 5F/15-17). During follow-up on May 26, 2017, the claimant's treatment provider noted that the claimant was walking normally and increasing her activities (Ex. 7F/5). At a physical examination in June 2017 the claimant was observed to have a full range of motion of all joints and a normal gait (Ex. 11F/360). By September 2017 the claimant's treatment provider noted that the claimant was ambulating by herself and while endorsing pain, indicated that physical therapy was helping while it continued to be recommended (Ex. 8F/2). Upon examination in November 2017 the claimant was observed to have a normal gait and full range of motion in all joints (Ex. 9F/83). In December 2017 the claimant reported doing much better and that she had reduced medication to one Norco per day and otherwise Motrin for back pain (Ex. 8F/4).

In January 2018 the claimant was discharged from physical therapy to a phase II gym program (Ex. 16F/2). At that time, it was noted that the claimant had significantly less, but continued lumbar pain (Ex. 16F/3). Further, the claimant's walking tolerance had improved significantly, while the claimant increased weight for leg press and weight lifting exercises (Ex. 16F/3). A physical examination in January 2018 showed that the claimant had a normal gait, normal motor strength, and a full range of motion of all joints (Ex. 11F/306). During examination in May 2018 the claimant was observed in no apparent distress with a normal posture and gait, as well as normal leg strength (Ex. 8F/18). At that time, it was noted that the claimant's pain was the best result following surgery, as the claimant only had "some" residual pain (Ex. 8F/18). Based upon the examination, only treatment on an as needed basis was recommended (Ex. 8F/18). Imaging of the claimant's lumbar spine in May 2018 showed a lower lumbar fusion and posterior decompression without motion (Ex. 9F/2). During examination in July 2018 the claimant was observed to have a normal gait, no tenderness, and a full range of motion of all joints (Ex. 11F/260).

Dr. Barnes conducted a second consultative examination of the claimant on November 20, 2018, and noted that the claimant reported that she performed her own physical therapy (Ex. 10F/2). Dr. Barnes observed that the claimant's gait was normal and she had no difficulty transitioning from the chair to examination table (Ex. 10F/3). Dr. Barnes indicated that the claimant's lumbar range of motion was reduced due to reported pain (Ex. 10F/3). Dr. Barnes noted that a straight leg raise was positive bilaterally sitting and supine (Ex. 10F/3). Dr. Barnes reported that the claimant's strength was five of five throughout, while muscle tone was normal without atrophy (Ex. 10F/4).

Upon examination in December 2018 the claimant was observed to have a normal gait and a full range of motion in all joints (Ex. 11F/236). In June 2019 the claimant followed up two years later with her lumbar surgery treatment provider (Ex. 17F/6). At that time, the claimant's gait and leg were observed as reasonably good (Ex. 17F/6). Further, the claimant was counseled to return to her primary care provider to consider physical therapy or pain management, while additional surgery was not recommended (Ex. 17F/6). Upon examination in July 2019 the claimant was observed to have a full range of motion of all joints, a normal gait, and normal strength (Ex. 18F/7). Treatment notes from September 2019

detailed that the claimant reported her lumbar symptoms were doing well and her medication was continued (Ex. 18F/3). Upon examination the claimant was observed in no acute distress, with a limited flexion of the back (Ex. 18F/4).

\* \* \*

When considering the factors in Social Security Ruling 16-3p, there is evidence consistent with the claimant's allegations. An MRI of the claimant's lumbar spine in March 2017 showed mild disc degeneration at L4-S1 with desiccation and slight bulging and marked facet hypertrophy at L4-L5 (Ex. 5F/9). In May 2017 the claimant underwent spinal surgery, including interbody fusions at L4-S1 (Ex. 5F/15-17).

However, when considering the factors in Social Security Ruling 16-3p, there is also evidence that is not entirely consistent with the claimant's allegations.

Although the claimant alleged that she was limited in her abilities to sit, stand, or walk, the record does not show that the claimant was as limited as limited as alleged. Prior to the claimant's surgery, the record shows that the claimant was not as limited as alleged. Although physical examinations showed reduced lumbar range of motion or tenderness, only medication based treatment and physical therapy were recommended (Ex. 11F/51, 76, 79, 147, 149, 556). Further, in February 2016 the claimant was discharged from physical therapy where it was noted that the claimant had improved tolerance for activity (Ex. 2F/2-4). During treatment in April 2016 the claimant reported that Norco made her back pain tolerable (Ex. 11F/146). This evidence shows that while the claimant had lumbar pain, the lack of varied treatment modalities and improvement through physical therapy show that such pain was less limiting than alleged by the claimant, as her treatment providers did not repeatedly modify treatment, which would be more suggestive of limiting pain. In addition, treatment providers did not note that the claimant repeatedly presented in acute distress that would be consistent with the claimant's allegations of severely limiting pain.

While it is true that the claimant underwent surgery, the record shows thereafter that the claimant had improvements. During follow-up treatment less than a month after surgery the claimant's treatment provider noted that the claimant was walking normally and increasing her activities (Ex. 7F/5). By September 2017 the claimant's treatment provider noted that the claimant was ambulating by herself and while endorsing pain, indicated that physical therapy was helping (Ex. 8F/2). In January 2018 the claimant was discharged from physical therapy to a phase II gym program (Ex. 16F/2). Further, the claimant's walking tolerance had improved significantly, while the claimant increased weight for leg press and weight lifting exercises (Ex. 16F/3). Such evidence is indicative that the surgery improved the claimant's functional abilities.

In addition, the record does not support the claimant's continued alleged degree of pain throughout the period at issue. In December 2017 the claimant reported doing much better and that she had reduced medication to one Norco per day and otherwise Motrin for back pain (Ex. 8F/4). The reduction of medication dosage suggests that the claimant's pain was more

adequately controlled than alleged by the claimant. This is supported by later treatment, where the claimant was observed to have a normal gait, normal motor strength, and a full range of motion of all joints without observations of the claimant appearing in pain or distress, let alone to the degree testified Exs. 8F/18; 11F/236. 260, 306; 18F/7). Instead, in May 2018 the claimant's treatment provider noted that the claimant reported she only had "some" residual pain (Ex. 8F/18). Further, while the claimant alleged that she spent up to twenty hours per day in bed secondary to pain, physical examinations by the consultative examiner years apart did not show muscle atrophy that would be consistent with such significant time in bed (Exs. 4F/4; 10F/4). The record also shows that the claimant repeatedly reported being able to drive, which requires sitting, without observations of the claimant in apparent distress by treatment providers after the completion of such driving (Exs. 3F/1; 4F/1; 18F/6).

The record also shows that the claimant is more functional than alleged. In July 2015 the claimant reported that she lived with her parents who are both disabled (Ex. 11F/60). The claimant reported to Dr. Barnes that she lived with two parents who are disabled and that she assists her mother with chores, including laundry, floor work, cooking, and shopping (Ex. 10F/2). The caring for disabled parents suggests that the claimant is more functional than alleged. Although the claimant testified that her parents who remained disabled now cared for her, such testimony is not supported by reporting to the claimant's treatment providers. In June 2016 the claimant sought treatment reporting pain incurred while walking across a street to attend a play and did not endorse concerns about sitting or walking to such events (Ex. 11F/178). Between July 2018 and September 2019 the claimant reported her activities were two days at the gym using a bike, treadmill, and performing squats, and that she bikes at home two times per week (Exs. 11F/258; 18F/2). These physical activities suggest that the claimant's severe impairment is not as limiting as alleged.

Finally, although the claimant alleged that her physical pain affected her psychiatric functioning, the record shows that the claimant remained cognitively intact. Dr. Kalman noted that the claimant was a good historian (Ex. 3F/1). Dr. Kalman reported that the claimant could recall three of three objects after a five-minute delay and three of the past five presidents (Ex. 3F/2). During treatment in January 2019 the claimant reported that she was making enchilada soup, which suggests that the claimant has abilities to concentrate, persist and follow instructions (Ex. 15F/3). Accordingly, the claimant's allegations are not entirely consistent with the evidence.

CAR 22-24, 26-27.

/ / /

/ / /

/ / /

/ / /

/ / /

23

Plaintiff contends the ALJ's rationale is "not convincing." ECF No. 15, pg. 24. More specifically, Plaintiff accuses the ALJ of cherry-picking evidence to support an adverse finding. See id. at 25-26.

The Court finds Plaintiff's argument unpersuasive and concludes that the ALJ properly evaluated Plaintiff's testimony. The ALJ discussed Plaintiff's testimony in detail and provided specific reasons for discounting her testimony. For example, the ALJ found Plaintiff's allegations were inconsistent with the medical evidence. The ALJ also cited evidence of record in support of this findings. Specifically, the ALJ discussed how Plaintiff's medical providers observed Plaintiff's normal gait, motor strength, and full range of motion citing several treatment notes. See, e.g., ECF No. 11-8, pg. 178; ECF No. 11-9, pg. 84; ECF No. 11-11, pgs. 89, 113; ECF No. 11-12, pg. 3; ECF No. 11-15, pg. 1449. The ALJ also relied on Dr. Barnes's opinions to discount Plaintiff's testimony that she spent 20 hours in bed per day. Notably, Dr. Barnes noted that Plaintiff did not experience muscle atrophy between when Dr. Barnes first saw Plaintiff in 2017 and when he saw Plaintiff again in 2018, which the ALJ found was inconsistent with such significant time in bed. See, e.g., ECF No. 11-15, pgs. 466, 735.

The ALJ also properly considered Plaintiff's daily activities. The ALJ found inconsistencies with Plaintiff's allegations and Plaintiff's reports to medical providers. For example, the ALJ noted that Dr. Barnes's report reflected that Plaintiff assisted her disabled parents with chores, floor work, laundry, cooking, and shopping and that helping disabled parents is an indication that Plaintiff is more functional than alleged. See, e.g., id. at 733. These activities were inconsistent with Plaintiff's testimony concerning extremely limited activity.

For these reasons, the Court finds that the ALJ properly evaluated Plaintiff's testimony.

### C.    **Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

At Step 4, the ALJ also considered third-party lay witness evidence offered by Plaintiff's mother. The ALJ stated:

> I have considered the third party function report and letter submitted by Terri Walther, the claimant's mother (Exs. 3E; 15E). Ms. Walther indicated that the claimant had difficulties when working, including being unable to sit for more than fifteen minutes and difficulties helping customers through conservation (Ex. 3E/1). Ms. Walther noted that the claimant frequently cried because of pain associated with her impairments (Ex. 3E/2). Ms. Walther reported that the claimant could walk for ten minutes before she needed to rest and could only pay attention for ten minutes (Ex. 3E/6). I give partial weight to the opinion of Ms. Walther. I credit the observations of Ms. Walther as based upon her familial relationship with the claimant. However, I give less weight to the more extreme observations of Ms. Walther. For example, although Ms. Walther reported that the claimant frequently cried because of pain associated with her impairment, treatment providers only sporadically observed that the claimant appeared in distress (*See*, for example, Exs. 8F; 11F). In addition, the record shows that following surgery, the claimant's pain was treated conservatively, with physical therapy and medication, which was repeatedly renewed (*See*, for example, Exs. 8F/4; 11F/79, 149, 556; 18F/3). Ms. Walther's opinion is also inconsistent with the claimant's reporting to Dr. Barnes that she lived with two parents who are disabled and that she assists her mother with chores, including laundry, floor work, cooking, and shopping (Ex. 10F/2). Further, Ms. Walther's opinion is inconsistent with the claimant's reporting between July 2018 and September 2019 that her activities were two days at the gym using a bike, treadmill, and performing squats, and that she bikes at home two times per week (Exs. 11F/258; 18F/2).

CAR 25-26.

///

///

///

Plaintiff argues that the ALJ's treatment of Plaintiff's mother's statements is flawed because the ALJ failed to properly evaluate Plaintiff's statements and testimony. According to Plaintiff:

> . . . The ALJ also failed to provide "germane" reasons for not fully crediting the third party statements of Ms. Walther's mother. The ALJ discredited her mother's statements for the same reasons she found Ms. Walther less than credible. However, as set forth above, the ALJ's articulated reasons for finding Ms. Walther less than credible were not convincing. The ALJ's treatment of the lay evidenced constituted reversible error. . . .

ECF No. 15, pg. 26.

The Court finds that the ALJ properly evaluated Plaintiff's mother's testimony. The ALJ found that the lay witness's testimony was inconsistent with what Plaintiff had reported to medical providers. For example, the lay witness testified that Plaintiff could not concentrate or walk for more than ten minutes. The ALJ noted that this was inconsistent with Dr. Barnes's report reflecting that Plaintiff assisted her disabled parents with chores, floor work, laundry, cooking, and shopping. See, e.g., ECF No. 11-15, pg. 733. Additionally, the ALJ found an inconsistency where the lay witness stated that Plaintiff frequently cried because of her pain. The ALJ found this to be inconsistent because medical providers only sporadically observed distress. See, e.g., id. at 548, 793. Because the ALJ's analysis was based on substantial evidence, the ALJ properly evaluated Plaintiff's mother's testimony.

///
///
///
///
///
///
///
///
///

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 15, is denied;
2. Defendant's motion for summary judgment, ECF No. 17, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 13, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE